## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Exide Holdings, Inc., *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 20-11157 (CSS)<br><br>(Jointly Administered) |
| Peter Kravitz, as GUC Trustee of the<br>GUC Trust of Exide Holdings, Inc., *et al.*,<br><br>       Plaintiff,<br><br>vs.<br><br>Phoenixx, L.P.,<br><br>       Defendant. | Adv. No. 21-50687 |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS AGAINST DEFENDANT, PHOENIXX, L.P.

**ASK LLP**

Gary D. Underdahl
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 289-3846
Fax: (651) 406-9676
Email: gunderdahl@askllp.com
***Counsel for Plaintiff, Peter Kravitz, as GUC Trustee of the GUC Trust of Exide Holdings, Inc., et al.***

Dated: June 28, 2023

**CONNOLLY GALLAGHER LLP**

Lisa Hatfield (#4967)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 888-6313
Email: lhatfield@connollygallagher.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are Exide Holdings, Inc. (5504), Exide Technologies, LLC (2730), Exide Delaware LLC (9341), Dixie Metals Company (0199), and Refined Metals Corporation (9311). The Debtors' mailing address is 13000 Deerfield Parkway, Building 200, Milton, Georgia 30004.

TABLE OF CONTENTS

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDING ..................................... 8

II.     SUMMARY OF ARGUMENT ............................................................................... 9

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................. 10

IV.     ARGUMENT ................................................................................................ 12

    a.  Legal Standard for Summary Judgment ..................................................... 12

    b.  The Transfers Were Property of the Debtor ................................................. 13

    c.  Plaintiff's Prima Facie Case Is Satisfied...................................................... 13

        i.      The Transfers Were Made to Defendant, a Creditor of Debtor. ........................... 14

        ii.     The Transfers Were on Account of Debt Owed by the Debtor Before the
                Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning of
                11 U.S.C. § 547(b)(2). .......................................................................... 14

        iii.    The Debtor Was Insolvent at all Times During the Preference Period and Has the
                Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f)... 15

        iv.     The Transfers Occurred on or Within 90 Days of Petition Date. ........................ 16

        v.      The Transfers Enabled Defendant to Receive More than it Would Have Received
                if the Transfers Had not Been Made and the Defendant Received Payment of its
                Debt to the Extent Provided by the Bankruptcy Code........................................... 16

        vi.     The Plaintiff Need Not Introduce Evidence That Exceptions To Avoidance Set
                Forth In 11 U.S.C. § 547(c) Are Inapplicable To These Transfers. ..................... 17

    d.  Viewing the Facts In A Light Most Favorable To Defendant, The Defendant Cannot
        Prove By A Preponderance Of The Evidence That It Is Entitled To Its Purported Ordinary
        Course Of Business Defense Under 11 U.S.C. § 547(c)(2)................................................ 18

        i.      Elements of the Ordinary Course of Business Defense. ....................................... 18

        ii.     The Subjective Standard Under 11 U.S.C. § 547(c)(2)(A).................................. 19

        iii.    The Transfers Were Not Subjectively Ordinary Because They Were Not Made In
                Accordance With The Prior Payment Practices.................................................... 23

        iv.     The Objective Standard Under 11 U.S.C. § 547(c)(2)(B). .................................. 24

    e.  The Plaintiff Is Entitled to an Award of Prejudgment Interest from the Date of the
        Original Complaint............................................................................................. 24

V.    CONCLUSION.................................................................................................. 27

TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abovenet, Inc. v. Lucent Technologies, Inc. (In re Metromedia Fiber Network, Inc.),*
   2005 WL 3789133 (Bankr. S.D.N.Y. Dec. 20, 2005) ........................................... 25

*Am. & Efrid, Inc. (In re Pillowtex Corp.),*
   416 B.R. 123 (Bankr. D. Del. 2009) .................................................................... 12

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................... 12, 13

*Big Wheel Holding Co., Inc. v. Fed. Wholesale Co. (In re Big Wheel Holding Co.),*
   223 B.R. 669 (Bankr. D. Del. 1998) .................................................................... 21

*Briden v. Foley,* 776 F.2d 379 (1st Cir. 1985) ........................................................ 15

*Burtch v. Conn. Cmty. Bank (In re J. Silver Clothing, Inc.),*
   453 B.R. 518 (Bankr. D. Del. 2011) .................................................................... 13

*Burtch v. Detroit Forming, Inc. (In re Archway Cookies),*
   435 B.R. 234 (Bankr. D. Del. 2010) .................................................................... 21

*Burtch v. Estate of Opus East, LLC (In re Opus East, LLC),*
   528 B.R. 30 (Bankr. D. Del. 2015) ................................................................ 25, 26

*Burtch v. Prudential Relocation, Inc. (In re AE Liquidation, Inc.),*
   2013 WL 3778141 (Bankr. D. Del. July 17, 2013) ........................................... 21, 22

*Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dept. Stores, Inc.),*
   470 B.R. 280 (S.D.N.Y. 20120) .......................................................................... 22

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................... 12

*Corel Petroleum, Inc. v. Banque Paribas-London,*
   797 F.2d 1351(5th Cir. 1986) .............................................................................. 13

*Fruehauf Trailer Corp. v. Gen. Bearing Corp. (In re Fruehauf Trailer Corp.),*
   96-01563 (PJW), 2008 WL 835693 (Bankr. D. Del. Mar. 27, 2008) .................... 15

*General Motors Corp. v Devex Corp.,*
   461 U.S. 648 (1983) ........................................................................................... 27

*Hassett v. Altai, Inc. (In re CIS Corp.),*
   214 B.R. 108 (S.D.N.Y. 1997) ............................................................................ 18

*Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Delaware, Inc.),*
   320 B.R. 541 (Bankr. D. Del. 2004) .................................................................... 25

*Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC),*
   346 B.R. 394 (Bankr. E.D.N.C. 2006) ............................................................ 19, 20

*In re Art Shirt Ltd., Inc.,*
   93 B.R. 333 (E.D. Pa. 1988) ............................................................................... 25

*In re Brazier Forest Products, Inc.*,
921 F.2d 221 (9th Cir. 1990) ................................................................. 18

*In re Brothers Gourmet Coffees, Inc.*,
271 B.R. 456 (Bankr. D. Del. 2002) ........................................................ 16

*In re Bullion Reserve of N. Am.*,
836 F.2d 1214 (9th Cir. 1988) ............................................................... 13

*In re Castillo*,
39 B.R. 45 (Bankr. D. Colo. 1984) .......................................................... 13

*In re Coco*, 67 B.R. 365 (Bankr. S.D.N.Y. 1986) ........................................... 15

*In re Contempri Homes*,
269 B.R. 124 (Bankr. M.D. Pa. 2001) ...................................................... 15

*In re First Software Corp.*,
81 B.R.211 (Bankr. D. Mass.1988) .......................................................... 18

*In re Foreman Indus., Inc.*,
59 B.R. 145 (Bankr. D. Ohio 1986) ......................................................... 26

*In re Forklift LP Corp.*,
340 B.R. 735 (D. Del. 2006) ................................................................. 21

*In re Keystone Foods, Inc.*,
145 B.R. 502 (Bankr. W.D. Pa. 1992) ...................................................... 17

*In re L&T Steel Fabricators, Inc.*,
102 B.R. 511 (Bankr. N.D. La. 1989) ....................................................... 26

*In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989) ......................... 26

*In re Molded Acoustical Products, Inc.*,
18 F.3d 217 (3d Cir. 1994) ............................................................. 20, 25

*In re Radnor Holdings Corp.*,
06- 10894(PJW), 2009 WL 2004226 (Bankr. D. Del. July 9, 2009) ..................... 13

*In re Total Tech. Serv., Inc.*,
150 B.R. 893 (Bankr. D. Del. 1993) ......................................................... 17

*In re TWA, Inc. Post Confirmation Estate*,
327 B.R. 706 (Bankr. D. Del 2005) .......................................................... 22

*In re USN Commc'ns, Inc.*,
280 B.R. 573 (Bankr. D. Del. 2002) ......................................................... 25

*In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193 (4th Cir. 1992) .............................. 17

*In re: AE Liquidation, Inc.*, 2015 WL 5301553 (D. Del. Sept. 10, 2015) ...................... 21

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) .................... 18

*Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*,
2010 WL 4622449 (Bankr. S.D.N.Y. Nov. 4, 2010) ...................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ............................................ 13

*Matter of Tolona Pizza Prods. Corp.*,
  3 F.3d 1029 (7th Cir. 1993) ....................................................................... 20, 21

*Official Comm. of Unsecured Creditors v. Juniper Commc'ns, Inc. (In re Network Access
  Solutions Corp.)*,
  320 B.R. 574 (Bankr. D. Del. 2005). ................................................................ 14

*Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*,
  2009 WL 2004226 (Bankr. D. Del. July 9, 2009) .................................................. 21

*Sass v. Vector Consulting, Inc. (In re Am. Home Mortgage Holdings, Inc.)*,
  476 B.R. 124 (Bankr. D. Del. 2012) ............................................................... 25

*Savage & Assoc. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324 (Bankr. S.D.N.Y. 2008) ....... 16

*Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*,
  292 B.R. 68 (Bankr. W.D. Pa. 2003) ............................................................... 17

*Schick v. Herskowitz (In re Schick)*,
  234 B.R. 337 (Bankr. S.D.N.Y. 1999) .......................................................... 13, 22

*Springel v. Prosser (In re Innovative Commc'ns Corp.)*,
  2011 WL 3439291 (Bankr. D.V.I. Aug. 5, 2011) ............................................... 25, 27

*Waslow v. The Interpublic Grp. Of Cos. (In re M Group, Inc.)*,
  308 B.R. 697 (Bankr. D. Del. 2004) ............................................................ 15, 17

*West Virginia v. United States*,
  479 U.S. 305 (1987) ............................................................................. 27

## **Statutes**

11 U.S.C. § 503(b)(9) ......................................................................... 11, 17

11 U.S.C. § 547 ............................................................................... 8, 9, 25

11 U.S.C. § 547(b) ....................................................................... 8, 9, 14, 18

11 U.S.C. § 547(b)(1) ........................................................................... 14

11 U.S.C. § 547(b)(4) ........................................................................... 16

11 U.S.C. § 547(b)(5) ....................................................................... 16, 17

11 U.S.C. § 547(c) ............................................................................. 18

11 U.S.C. § 547(c)(2) .......................................................................... 19

11 U.S.C. § 547(c)(2)(A) ................................................................. 19, 20, 22

11 U.S.C. § 547(c)(2)(B) .................................................................... 19, 24

11 U.S.C. § 547(g) ......................................................................... 14, 20

11 U.S.C. § 550 ............................................................................ 25, 26

28 U.S.C. § 1961 ................................................................................................................... 27

PL 109–8, April 20, 2005, 119 Stat 23 ................................................................................ 19

**Other Authorities**

5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547 .04[2], (16th ed. 2010) ............................................................................................................................. 20

**Rules**

Federal Rule of Bankruptcy Procedure 7056 ...................................................................... 8, 12

Federal Rule of Civil Procedure 56(a) ........................................................................... 8, 12, 13

Federal Rule of Civil Procedure 56(c) .................................................................................... 12

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, and pursuant to Local Rule 7007-1, Peter Kravitz as GUC Trustee of the GUC Trust of Exide Holdings, Inc., *et al.* (the "Trustee" or "Plaintiff") submits this Opening Brief in support of its *Motion for Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Phoenixx, L.P.* (the "Motion"). There are no material facts to dispute Plaintiff's *prima facie* case under 11 U.S.C. § 547(b).  Additionally, as set forth below, the undisputed material facts warrant  judgment as a matter of law in Plaintiff's favor on the affirmative defenses raised by Phoenixx, L.P. (the "Defendant").

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

On May 19, 2020 (the "Petition Date"), Debtors each commenced chapter 11 proceedings by filing a voluntary petition for relief in this Court. The 90-day period before the Petition Date was February 19, 2020 through and including May 19, 2020 (the "Preference Period"). The Court entered an order under Bankr. Rule 1015(b) authorizing joint administration of the Debtors' chapter 11 cases on May 21, 2020. [Bankruptcy Case No. 20-11157 Docket Index No. 103 (herein "Bankr. D.I. ___").]

On October 16, 2020, the Court entered an order confirming the *Fourth Amended Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors* (the "Confirmation Order" and "Plan," respectively). [Bankr. D.I. 977 and 998.] The Plan became effective on October 26, 2020. Pursuant to the Confirmation Order and Plan, Plaintiff is authorized and has standing to prosecute and settle certain causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action. Pursuant to Section 4.7 of the Plan and Section V.C of the *Amended Disclosure Statement for Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors* (the "Disclosure Statement"), general unsecured claims comprise an impaired class of creditors

and are not expected to be paid in full. [D.I. 733.]

On June 15, 2021, Plaintiff filed a complaint to avoid transfers under 11 U.S.C. §§ 547, 548, and 550 and to disallow claims under § 502, initiating this adversary proceeding (the "Adversary Proceeding"). [Adversary Proceeding Docket Index Number 1 (herein "D.I. ___")]. Defendant filed an answer to the Complaint on September 13, 2021. [D.I. 9.] The parties attended mediation on March 3, 2022, but did not settle. [D.I. 20.]

On or about June 10, 2022, Defendant served its responses to Plaintiff's requests for admission, interrogatories, and requests for production of documents ("Defendant's Discovery Responses"). Declaration of Peter Kravitz (the "Kravitz Decl."), ¶ 5, attached hereto as Exhibit 1.  Pursuant to the *Amended Scheduling Order* entered in this matter, all fact discovery closed on February 28, 2023, and all dispositive motions are to be filed and served on or before January 15, 2024. [D.I. 24.]

## II.    SUMMARY OF ARGUMENT

Preference laws are designed to treat the unsecured creditors of a debtor equally, setting those unhappy creditors who received no payment at all in the 90 days before the petition date on equal footing with those "preferred" creditors fortunate enough to receive payment on owed debts during the same period. Once it is established that a creditor received payments during the preference period, the presumption is that a payment is preferential unless and until a creditor can affirmatively establish that some or all payments are protected from avoidance.

In the instant case, Plaintiff has met the burden to prove its case in chief, and $334,661.32 in Transfers are recoverable under 11 U.S.C. § 547(b), subject to Defendant's alleged ordinary course of business ("OCB") affirmative defense. The parties do not disagree on the material facts

supporting the OCB defense or the payment history between the Debtors and Defendant, making this issue ripe for determination on summary judgment.

Summary judgment for the Plaintiff should therefore be granted as a matter of law, and judgment should be entered in favor of the Plaintiff and against the Defendant in the amount of $334,661.32, plus prejudgment interest from the date of the filing of the Complaint on June 15, 2021 through June 22, 2023 in the additional amount of $338.56, for a total of $334,999.88.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    As of the Petition Date, the Debtors used a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[2] As of the Petition Date, the Debtors' Cash Management System consisted of twenty-four bank accounts (the "Bank Accounts") maintained at various financial institutions, including Bank of America Merrill Lynch ("BAML") and Bank of Montreal ("BMO"). [*See* D.I. 3.]

2.    Among these bank accounts, disbursements to vendors were made from the following accounts: accounts ending 9885 and 7137, held at BMO by Exide Technologies, LLC; account ending 5988, held by Refined Metals Company at BAML; account ending 5970, held by Dixie Metals at BAML; and accounts ending 5951 and 5962, held by Exide Technologies, LLC at BAML (collectively, the "Disbursement Accounts"). [*See id.*]

3.    The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including

---

[2] *See Motion of Debtors Requesting Authority To (I) Continue Using Existing Cash Management System, Bank Accounts, And Business Forms, (II) Implement Changes To The Cash Management System In The Ordinary Course Of Business, (III) Continue Intercompany Transactions, (IV) Provide Administrative Expense Priority For Postpetition Intercompany Claims, and (V) Extend Time To Comply With, Or Seek Waiver of, 11 U.S.C. § 345(b)* (the "Cash Management Motion"). [D.I. 3.]

Defendant. [*See id.*]

4.     During the Preference Period, the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

5.     During the Preference Period, the Debtor made and Defendant received one electronic funds transfer totaling $334,661.32 (the "Transfer"). Kravitz Decl. ¶ 7.

6.     Each Transfer was made for Defendant's benefit or the benefit of a creditor. *Id*. ¶ 8.

7.     At the time the Transfers were made, the Defendant was a creditor of the Debtor. *Id*. ¶ 9.

8.     The Transfers were payments on antecedent debt, as the payments were made pursuant to an obligation that arose prior to the payments. *Id*. ¶ 10.

9.     The Defendant had a right to receive each Transfer in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtor at the time the payment was made. *Id*. ¶ 11.

10.     Pursuant to the Confirmation Order and Plan [Bankr. D.I. 977 and 998], both general unsecured claims and claims made pursuant to 11 U.S.C. § 503(b)(9) are impaired. *Id*. ¶ 12. The filed disclosure statement [Bankr. D.I. 733] projected unsecured creditors to receive a 0% distribution, and for Section 503(b)(9) claimants to receive between 5- 58% on their claims. *Id*. The Debtors have continued the process of objecting to certain claims, and therefore have yet to complete their reconciliation of claims; however, the combination of secured and unsecured claims is far greater than available assets. Accordingly, distribution to general unsecured creditors will be far less than 100%. *Id.*

11.    Defendant did not hold a fully perfected security interest in the assets of the Debtors. *Id.* ¶ 13.

12.    The Debtors and Defendant conducted business with each other at least as early as May 31, 2018, or over one year before the start of the preference period. *See Id.* ¶ 18 at Ex. F (Historical Period Invoice to Payment Detail).

13.    Correspondence between parties during the Preference Period shows Defendant repeatedly—at least six times over one month—requesting payment for invoice 16678. Kravitz Decl. ¶ 17.

## IV.    ARGUMENT

### a.  Legal Standard for Summary Judgment

In accordance with Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Am. & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 126 (Bankr. D. Del. 2009). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is considered material if it might affect the outcome of the suit under governing law. *See Id.* at 248.

If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "'If

the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.'" *Burtch v. Conn. Cmty. Bank (In re J. Silver Clothing, Inc.)*, 453 B.R. 518, 525 (Bankr. D. Del. 2011) (quoting Fed. R. Civ. P. 56). "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

### b.    The Transfers Were Property of the Debtor

"For a preference to be voided under Section 547, it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished." *Corel Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355-56 (5th Cir. 1986), *rev denied*, 801 F.2d 398 (5th Cir. 1986) (quoting *In re Castillo*, 39 B.R. 45, 46 (Bankr. D. Colo. 1984)). Money paid from a bank account under the debtor's control is presumptively property of the debtor. *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 (9th Cir. 1988), *cert denied* 486 U.S. 1056, 108 S. Ct. 2824, 100 L. Ed. 2d 925 (1988); *In re Radnor Holdings Corp.*, 06-10894 (PJW), 2009 WL 2004226, *2 (Bankr. D. Del. July 9, 2009) (citing *Schick v. Herskowitz (In re Schick)*, 234 B.R. 337, 343 (Bankr. S.D.N.Y. 1999)). In this case, the Transfers are presumptively the Debtor's property because the Transfers came from the Debtors' bank account. Kravitz Decl. ¶ 7.

### c.    Plaintiff's Prima Facie Case Is Satisfied

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings and affidavits submitted in connection with this adversary proceeding show that there is no genuine issue as to the fact that the Plaintiff has alleged all of the necessary elements to satisfy its *prima facie* case under 11 U.S.C. § 547(b), and the Plaintiff is therefore entitled to judgment as a matter of law.

To be recoverable as a preferential transfer, a payment must satisfy all the requirements

of 11 U.S.C. § 547(b). Specifically, the transfer must have been:

> (1) made to or for the benefit of a creditor;
> (2) made for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made on or within ninety (90) days before the date of filing of the petition; and
> (5) enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b). The trustee or debtor in possession bears the burden of proving each of these elements by a preponderance of the evidence. 11 U.S.C. § 547(g); *Official Comm. of Unsecured Creditors v. Juniper Commc'ns, Inc. (In re Network Access Solutions Corp.)*, 320 B.R. 574, 576 (Bankr. D. Del. 2005).

### i. The Transfers Were Made to Defendant, a Creditor of Debtor.

The Defendant received the Transfer sought to be recovered by the Plaintiff, as listed on Exhibit A to the Complaint. Kravitz Decl. ¶ 7. The Transfer was made for the Defendant's benefit or the benefit of a creditor. Kravitz Decl. ¶ 8. Further, at the time Debtor made the Transfer, the Defendant was a creditor of the Debtor. *Id.* ¶ 9. These facts provide uncontroverted evidence that the Transfer was made to the Defendant, a creditor of the Debtor. 11 U.S.C. § 547(b)(1). Thus, the first element of Plaintiff's claim is conclusively established.

### ii. The Transfers Were on Account of Debt Owed by the Debtor Before the Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning of 11 U.S.C. § 547(b)(2).

A debt is antecedent if the debt is incurred prior to the transfer in question. *Fruehauf Trailer Corp. v. Gen. Bearing Corp. (In re Fruehauf Trailer Corp.)*, 96-01563 (PJW), 2008 WL 835693, *4 (Bankr. D. Del. Mar. 27, 2008) (quoting *In re Contempri Homes*, 269 B.R. 124, 127 (Bankr. M.D. Pa. 2001)). The facts in this case establish that the Transfers were payments on antecedent debt, as the payments were made pursuant to an obligation that arose prior to the

payments. Kravitz Decl. ¶ 10. The Defendant had a right to receive each Transfer in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtor at the time the payment was made. *Id.* ¶ 11.

The second element of the Plaintiff's case is therefore established.

### iii. The Debtor Was Insolvent at all Times During the Preference Period and Has the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f).

For purposes of the third element, the debtor is presumed insolvent during the ninety days preceding the filing of the petition. *See* 11 U.S.C. § 547(f); *Waslow v. The Interpublic Grp. Of Cos. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr. D. Del. 2004). A creditor's lack of knowledge of the debtor's insolvency is no defense. *See Briden v. Foley*, 776 F.2d 379, 381, n. 3 (1st Cir. 1985) ("The requirement that the creditor have reasonable cause to believe that the debtor was insolvent at the time of the transfers was eliminated by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984"); *In re Coco*, 67 B.R. 365, 371 (Bankr. S.D.N.Y. 1986). Because the Debtor has the benefit of this presumption, "[t]he party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent at the time of the transfer." *In re Brothers Gourmet Coffees, Inc.*, 271 B.R. 456 (Bankr. D. Del. 2002). A party seeking to avoid a transfer may rest upon the presumption if the creditor fails to produce some evidence of solvency. *Id.* If the party seeking to rebut the presumption fails, there is no material issue as to the Debtor's insolvency. *Id.*

Defendant claims it "had no knowledge of Plaintiff's insolvency at the time of the alleged transfer and therefore … the alleged transfers [*sic*] do not constitute a preference … ." [D.I. 9, ¶ 13.] The argument is developed no further. Because the 1984 amendments made creditor's knowledge of insolvency irrelevant to the § 547(b)(3) determination, and because Defendant has produced no evidence to challenge the presumption of insolvency,

Debtor is presumed to have been insolvent during the ninety (90) days prior to the Petition Date.

### iv.  The Transfers Occurred on or Within 90 Days of Petition Date.

The Preference Period in this matter is February 19, 2020 through and including May 19, 2020. The Transfer was made during the Preference Period. Kravitz Decl. at ¶ 7. Section 547(b)(4)(A) is therefore satisfied.

### v.  The Transfers Enabled Defendant to Receive More than it Would Have Received if the Transfers Had not Been Made and the Defendant Received Payment of its Debt to the Extent Provided by the Bankruptcy Code.

Whether a transfer meets the test of Section 547(b)(5) of the Bankruptcy Code requires the formulation of a hypothetical Chapter 7 distribution of the debtor's estate as it existed on the bankruptcy petition date. *Savage & Assoc. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). The Court must determine whether the creditor obtained more pursuant to the transfer than the creditor would have received in a Chapter 7 distribution without the transfer. 11 U.S.C. § 547(b)(5); *In re M Group, Inc.*, 308 B.R. at 700.

"Courts have consistently held that as long as the distribution in bankruptcy is less than 100 percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *Id.* (citing *Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*, 292 B.R. 68, 78 (Bankr. W.D. Pa. 2003)); s*ee also In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193, 198-99 (4th Cir. 1992); *accord In re Keystone Foods, Inc.*, 145 B.R. 502, 509 (Bankr. W.D. Pa. 1992). Therefore, a transfer is usually preferential if the distribution to unsecured trade creditors is less than 100% because a payment to a trade creditor during the preference period would enable that creditor to receive a 100% payment. *See In re Total Tech. Serv., Inc.*, 150 B.R. 893 (Bankr. D. Del. 1993).

In the instant case, the Chapter 11 unsecured creditors will not receive the 100% payout required to render inapplicable 11 U.S.C. § 547(b)(5). Pursuant to the *Confirmation Order* and *Plan* both general unsecured claims and claims made pursuant to Section 503(b)(9) are impaired. Kravitz Decl. ¶ 12. The Debtors have continued the process of objecting to certain claims, and therefore have yet to complete their reconciliation of all claims; however, the combination of secured and unsecured claims is far greater than available assets. *Id.* Accordingly, any distribution to general unsecured creditors will be far less than 100%. *Id.* The Defendant is an unsecured creditor, as it did not hold a perfected security interest in the assets of the Debtor with respect to the Transfers. Kravitz Decl. ¶ 13; Ex. C.

The Plaintiff has accordingly met its burden of proving that the Transfers enabled the Defendant to receive more than it would have received had the Debtor filed a Chapter 7 case without having made the Transfers at issue.

The pleadings in this adversary proceeding, together with the declaration and exhibits, show there is no genuine issue as to any material fact with respect to the avoidability of the Transfers under Section 547(b). Accordingly, unless the Defendant can establish any affirmative defenses under Section 547(c), the Plaintiff is entitled to judgment as a matter of law.

### vi.   The Plaintiff Need Not Introduce Evidence That Exceptions To Avoidance Set Forth In 11 U.S.C. § 547(c) Are Inapplicable To These Transfers.

The moving party on summary judgment has no burden to negate or disprove matters for which the opponent has the burden of proof at trial. Indeed, the moving party need not produce any affirmative evidence at all on those matters. *See In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). The Defendant has the burden of proving the nonavoidability of the Transfers by a preponderance of the evidence, and the Plaintiff, as the moving party, may simply point to the absence of such to make its case. *See J.F. Feeser, Inc. v. Serv-A-Portion,*

*Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990); *Hassett v. Altai, Inc.* (*In re CIS Corp.*), 214 B.R. 108, 119 (S.D.N.Y. 1997). Moreover, "[b]ecause of the policy served by preference law, courts have repeatedly held that the exceptions contained in 11 U.S.C. § 547(c), including the ordinary course of business exception, 'should be narrowly construed.'" *In re CIS Corp.*, 214 B.R. at 119-20 (quoting, *inter alia*, *In re First Software Corp.*, 81 B.R.211, 213 (Bankr. D. Mass. 1988)).

Defendant asserts six defenses in its answer. *See* D.I. 9, pp. 14–16 (styled as four). Only the first defense—that the Preference Period transfers were made in the subjective ordinary course—will be addressed below. The second defense, under the doctrine of recoupment or set-off, received only perfunctory treatment in the Answer and has received no subsequent attention. We treat this defense as abandoned. The third and fourth defenses, that Plaintiff failed to meet the burden of establishing a prima facie case because (1) the challenged transfers were outside of the 90 days preceding bankruptcy and (2) not on account of antecedent debt have been formally proven by Plaintiff. *See* Kravitz Decl. ¶¶ 7 and 10. The fifth defense, that Defendant had no knowledge of Plaintiff's insolvency is discussed above. Finally, Defendant asserts that Plaintiff's Complaint fails to state a claim upon which relief may be granted. Defendant has not articulated this defense any further than its boilerplate inclusion in the Answer.

> **d. Viewing the Facts In A Light Most Favorable To Defendant, The Defendant Cannot Prove By A Preponderance Of The Evidence That It Is Entitled To Its Purported Ordinary Course Of Business Defense Under 11 U.S.C. § 547(c)(2).**

> **i. Elements of the Ordinary Course of Business Defense.**

Section 547(c) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[3] permits a "safe harbor" for a transferee of a preferential payment that can satisfy the requirements set forth in either 11 U.S.C. §

---

[3] PL 109–8, April 20, 2005, 119 Stat 23.

547(c)(2)(A) or § 547(c)(2)(B):

> (c) The trustee may not avoid under this section a transfer –
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

This section, as amended, provides for two "separate, independent" defenses. *See Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*, 346 B.R. 394, 396 (Bankr. E.D.N.C. 2006) (stating that the post-BAPCPA version of Section 547(c)(2) includes an "ordinary course of business" defense under subsection (A), as well as an "ordinary business terms" defense under subsection (B)).

The preference statute is designed to recover preferences not only from a "pushy" unsecured creditor, but also in situations where a "fawning debtor" uses a transaction to advantage a favored creditor. *In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 223 (3d Cir. 1994). A transfer is therefore preferential not only when a creditor undertakes actions to advantage itself at the expense of other creditors, but also when a debtor's favored treatment to a creditor ensures that the creditor receives payment while other creditors remain unpaid. Such payments go against the Bankruptcy Code's objective of treating all creditors equally.

### ii. The Subjective Standard Under 11 U.S.C. § 547(c)(2)(A).

The ordinary course of business defense "'is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *In re Nat'l Gas Distrib., LLC)*, 346 B.R. at 396. (quoting 5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547 .04[2], at 547–51 (16th ed. 2010)). Under the so-called subjective test of Section 547(c)(2)(A), a defendant must prove

by a preponderance of the evidence that the transfers were made in the ordinary course of dealings between the debtor and the creditor. 11 U.S.C. § 547(c)(2)(A); 547(g). The transfers at issue should "conform to the norm established by the debtor and creditor in the period before, preferably well before, the preference period." *In re Molded Acoustical Prods., Inc.*, 18 F.3d 217, 223 (3d Cir. 1994) (citing *Matter of Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993)).

Courts examine a variety of factors when determining whether preference period payments are subjectively ordinary between the parties, including:

> (i) the length of time the parties engaged in the type of dealing at issue; (ii) whether the subject transfers were in an amount more than usually paid; (iii) whether the payments at issue were tendered in a manner different from previous payments; (iv) whether there appears to have been an unusual action by the creditor or debtor to collect on or pay the debt; and (v) whether the creditor did anything to gain an advantage (such as obtain additional security) in light of the debtor's deteriorating financial condition.

*Burch v. Prudential Relocation, Inc. (In re AE Liquidation, Inc.)*, 2013 WL 3778141 at *5 (Bankr. D. Del. July 17, 2013) *aff'd in part*, *sub nom.* (*In re: AE Liquidation, Inc.*, 2015 WL 5301553 (D. Del. Sept. 10, 2015)). While the Court examines these multiple factors when determining whether payments were made in the ordinary course of business, it has noted that courts place particular emphasis on the timing of payments. *See In re AE Liquidation*, 2013 WL 3778141 at *5 (citing *Burch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234, 241-42 (Bankr. D. Del. 2010)); *Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*, 2009 WL 2004226, *5 (Bankr. D. Del. July 9, 2009).

Late payments are typically not ordinary unless the creditor establishes a consistent pattern of late payment between the parties.[4] *See, e.g., In re Forklift LP Corp.*, 340 B.R. 735, 739

---

[4] The *Tolona* court provided an apt explanation on why late payments are considered

(D. Del. 2006) (citing *Big Wheel Holding Co., Inc. v. Fed. Wholesale Co. (In re Big Wheel Holding Co.),* 223 B.R. 669, 674 (Bankr. D. Del. 1998).  Early payments are likewise considered out of the ordinary course of business if the defendant does not produce evidence that early payment was the norm between the parties prior to the preference period. *See, e.g., In re AE Liquidation,* 2013 WL 3778141 at *6 (citing *Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dept. Stores, Inc.)*, 470 B.R. 280, 285 (S.D.N.Y. 20120); *Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, 2010 WL 4622449 at *4 (Bankr. S.D.N.Y. Nov. 4, 2010)); *In re TWA, Inc. Post Confirmation Estate*, 327 B.R. 706 (Bankr. D. Del 2005).

In order to establish the subjective criteria of 11 U.S.C. § 547(c)(2)(A), a creditor must generally produce some evidence of the "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealings." *Schick v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). This often involves an examination of the average days to pay in the historical period as compared to the preference period. *See, e.g., In re AE Liquidation,* 2013 WL 3778141 at *6 (reviewing increase in timing based on change in average); *In re M. Fabrikant & Sons, Inc.,* 2010 WL 4622449 at *3 ("[t]he starting point—and often ending point—involves the

---

preferential:

> It may seem odd that paying a debt late would ever be regarded as a preference to the creditor thus paid belatedly. But it is all relative. A debtor who has entered the preference period—who is therefore only 90 days, or fewer, away from plunging into bankruptcy—is typically unable to pay all his outstanding debts in full as they come due. If he pays one and not the others, as happened here, the payment though late is still a preference to that creditor, and is avoidable unless the conditions of section 547(c)(2) are met. One condition is that payment be in the ordinary course of both the debtor's and the creditor's business. A late payment normally will not be. It will therefore be an avoidable preference.

*Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993).

consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory").

Finally, it is "well settled" that payments made because of economic pressure or debt collection practices not common to the industry are not made in the ordinary course of business. *Off. Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relation Servs. Inc. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005). Accordingly, even if payments during the preference period were timely in comparison with prior payments other factors, such as collection pressure, may remove the payments from the ordinary course of business defense. *Id*. at 211.

Creditor pressure can include an acceleration of payments, a change in credit terms imposed upon the parties' transactions, or a threat to stop shipments which spurs the debtor to pay, etc. *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004) (emphasis added); *Halperin v. All Am. Poly Corp. (In re FBI Wind Down)*, 581 B.R. 116, 143 (Bankr. D. Del. 2018) (finding the threatening of account holds to be unusual collection activity); *Gold Force Int'l, Ltd. v. Off. Comm. of Unsecured Creditors of Cyberrebate.com, Inc.*, No. 03 CV 5982(JG), 2004 WL 287144, at *5 (E.D.N.Y. Feb. 10, 2004) (finding that the creditor engaged in pressure tactics and that the payments were not within the ordinary course of business where it attempted to suspend trading (delayed shipment of goods) due to payment delays and made phone calls to inquire about the status of payment and resent invoices for that payment); *Braniff Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 781 (Bankr. M.D. Fla. 1993) (finding that there were unusual debt collection effectors where the creditor made threats to stop shipment of new merchandise unless payment were made on outstanding invoices). Accordingly, courts have held that any payment made following unusual or varying creditor

pressure is outside the ordinary course of business for the parties.

Additionally, when assessing whether the payments were the product of unusual collection activity, even if the activity was not "overly aggressive," collection activity can nonetheless be found if it was unusual in comparison to the parties' pre-preference period relationship. *U.S. Bank Nat'l Ass'n. v. Spectra Mktg. Sys., Inc.* (*In re Interstate Bakeries Corp*.), No. 04-45814, 2011 WL 96815, at *5 (Bankr. W.D. Mo. Jan. 12, 2011), *aff'd*, 460 B.R. 222 (B.A.P. 8th Cir. 2011), *aff'd*, 476 F. App'x 97 (8th Cir. 2012) (finding that the transfers fell outside of ordinary course of business).

### iii. The Transfers Were Not Subjectively Ordinary Because They Were Not Made In Accordance With The Prior Payment Practices.

During the two years prior to the Preference Period (the "Historical Period"), the Debtors paid Defendant nearly $3.29 million on 9 outstanding invoices. Kravitz Decl., ¶ 6.

During the Historical Period, all the transfers were made between 6–35 days from invoice date to payment date (the "OCB Range"), with a weighted average of 18 days. Conversely, none of the Transfers made during the Preference Period paid invoices within the OCB range. Instead, the lone Preference Period payment was made 49 days from the invoice date. As a result, based on timing alone, the Preference Period transfer, paid 14 days later than the latest historical transfer, was not made within the ordinary course of business between the parties.

Moreover, in reviewing the Debtors' email records, Plaintiff found email communications between parties that raised a clear indication of creditor pressure. Correspondence between parties during the Preference Period shows Defendant repeatedly—at least six times over one month— requesting full payment for invoice 16678. Kravitz Decl. ¶ 17; Ex. D. In correspondence dated March 24, 2020, after again demanding payment for invoice 16678, Defendant informed Debtors their late payment was "causing an issue" and that a late fee would be collected. *Id.* at ¶ 17(h); Ex.

23

D. Courts have routinely recognized that payments made pursuant to creditor pressure, such as the pressure exerted by Defendants, are not made in the ordinary course. *In re 360Networks (USA) Inc.*, 338 B.R. at 210. These emails further support the notion that this payment falls outside the protection of the ordinary course of business defense and the net preference remains at $334,661.32.

### iv.   The Objective Standard Under 11 U.S.C. § 547(c)(2)(B).

Section 547(c)(2)(B) is an objective test which "looks not to the specifics of the transaction between the debtor and the particular creditor, but rather focuses on general practices in the industry, in particular the industry of the creditor." *Abovenet, Inc. v. Lucent Technologies, Inc. (In re Metromedia Fiber Network, Inc.)*, 2005 WL 3789133, *5 (Bankr. S.D.N.Y. Dec. 20, 2005); *see also Sass v. Vector Consulting, Inc. (In re Am. Home Mortgage Holdings, Inc.),* 476 B.R. 124, 140-41 (Bankr. D. Del. 2012) (discussing that creditor must establish range of terms on which firms similar to the creditor operate); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Delaware, Inc.),* 320 B.R. 541, 550 (Bankr. D. Del. 2004) (citing *In re Molded Acoustical Prod.*, 18 F.3d 217, 224 (3d Cir. 1994) for proposition that ordinary business terms encompass the range of terms engaged by firms similar to the creditor).

Defendant has submitted no evidence to suggest that it can meet the burden of establishing that the Transfers were made according to ordinary business terms in the Defendant's industry.

### e.   The Plaintiff Is Entitled to an Award of Prejudgment Interest from the Date of the Original Complaint.

It is within a court's discretion to grant prejudgment interest in actions brought under 11 U.S.C. § 547. *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 574 (3d Cir. 2007); *Burtch v. Estate of Opus East, LLC (In re Opus East, LLC)*, 528 B.R. 30, 108-109 (Bankr. D. Del. 2015);

*In re USN Commc'ns, Inc.*, 280 B.R. 573, 601 (Bankr. D. Del. 2002); *In re Art Shirt Ltd., Inc.*, 93 B.R. 333, 342 (E.D. Pa. 1988).

Section 550 of the Bankruptcy Code allows the Plaintiff to recover the value of property transferred under 11 U.S.C. § 547.[5] Section 550 restores the estate to the *full value* of the asset transferred to the preferred creditor, thereby compensating the estate for the loss of the time value of the asset. *See Springel v. Prosser (In re Innovative Commc'ns Corp.)*, 2011 WL 3439291, *49 (Bankr. D.V.I. Aug. 5, 2011) ("an award of prejudgment interest in an avoidance action furthers the congressional policies of the Bankruptcy Code by compensating the estate for the time it was without the use of the transferred funds."); *In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989). Section 550 provides that the Plaintiff can recover a preferential transfer or its value. 11 U.S.C. § 550. Value includes prejudgment interest "from the date of demand for return of the preference or, in the absence of a prior demand, from the date of the commencement of the adversary proceeding." *In re Opus East,* 528 B.R. at 108 (internal quotations omitted).

The Bankruptcy Code's policy of equal distribution to creditors favors the award of prejudgment interest from the date of filing the original complaint. In *In re Foreman Indus., Inc.*, 59 B.R. 145 (Bankr. D. Ohio 1986), the court stated as follows:

> It is necessary to recognize that if litigation to recover a pre-filing transfer is successful, **recovering only the amount originally transferred is not adequate.** Not only would the one creditor have received one hundred percent of the amount owed by debtor, but the creditor would have also had total control of and use of the property transferred, including the opportunity to simply invest the amount in question . . . at the same time, the debtor's

---

[5] 11 U.S.C. § 550(a) states in relevant part: "To the extent that a transfer is avoided under Section . . . 547 . . . of this Title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made … ."

> estate would have been deprived not only of the property transferred, to which it was rightfully entitled, but also the control and use of the property, particularly for investment purposes. In such a situation, all creditors and claimants of the estate would have had the amount they were entitled to receive diminished not merely by the wrongful transfer of the funds, but also by the continued retention of those funds.

*Id.* at 155 (emphasis added). The time value of money is an asset of the estate that should be recovered for the benefit of all creditors under the policy in the Bankruptcy Code, which favors equal treatment for all creditors of a bankruptcy estate.

By awarding prejudgment interest from the date of the original complaint, both the estate and the transferee are restored to the economic position each occupied before the preferential transfer. In other words, the status quo ante is achieved.  Prejudgment interest is not a penalty, but rather is viewed as "delayed damages to be awarded as a component of compensation to the prevailing party." *General Motors Corp. v Devex Corp.*, 461 U.S. 648, 654 n.10 (1983); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).

Prejudgment interest may therefore be recovered by Plaintiff "from the date of commencement of this action at the federal judgment interest rate in effect as of that date."  *In re Innovative Commc'ns Corp.*, 2011 WL 3439291 at *49. The interest rate pursuant to 28 U.S.C. § 1961(b) is the rate applicable to one year Treasury maturities for the week preceding the date the complaint was filed.  *Id*.  The original complaint in this Adversary Proceeding was filed on June 15, 2021.  The applicable prejudgment interest rate is accordingly 0.05%.  *See* Kravitz Decl. ¶ 19.

In the instant case, as of June 15, 2021, prejudgment interest from the date of the filing of the original complaint has accrued in the amount of $338.56. This amount is computed on the $334,661.32 in net preference payments sought to be recovered and calculated at the Federal Rate

of Interest as of June 11, 2021 (0.05%). Kravitz Decl. ¶ 19. Accordingly, prejudgment interest continues to accrue at a per diem rate of $0.46.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting the Motion in its entirety and entering judgment in favor of Plaintiff in the principal amount of $334,661.32, plus prejudgment interest from the date of the filing of the Complaint on June 15, 2021, through April 10, 2023 in the additional amount of $338.56, for a total of $334,999.88.

Dated: June 28, 2023
Primary Counsel

**ASK LLP**

Gary D. Underdahl
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 289-3846
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

      and

Delaware Counsel
(Please contact primary counsel.)

**CONNOLLY GALLAGHER LLP**

/s/ *Lisa Hatfield*
Lisa Hatfield (#4967)
1201 North Market Street, 20th Floor
Wilmington, Delaware 19801
Telephone: (302) 888-6313
Email: lhatfield@connollygallagher.com

***Counsel for Plaintiff, Peter Kravitz, as GUC Trustee of the GUC Trust of Exide Holdings, Inc., et al.***