# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXIDE HOLDINGS, INC., *et al.*, | Case No. 20-11157 (LSS) |
| Debtors. | (Jointly Administered) |
| PETER KRAVITZ, as GUC Trustee of the GUC Trust of Exide Holdings, Inc., *et al.*, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 21-50687 (LSS) |
| PHOENIXX, L.P. | |
| Defendant. | |

## OPINION

This is a preference action challenging a single prepetition transfer of funds from Exide Technologies, LLC to Phoenixx, L.P. as payment for bulk shipments of tin ingots. Before the Court is Plaintiff's Motion for Summary Judgment.[1] The matter ultimately turns on Phoenixx's affirmative defense that the transfer occurred in the ordinary course of business between the parties. For the reasons set forth below, I will deny Plaintiff's Motion.

---

[1] Pl.'s Mot. for Summ. J. with Respect to Pl.'s Claims Against Def., Pheonixx, L.P., ECF No. 26 ("Motion"). References to "ECF No." in this Opinion refer to the adversary proceeding docket, 21-50687, unless otherwise specified.

**Procedural Posture**

Exide Holdings, Inc. and its four affiliated debtors,[2] (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 on May 19, 2020. The Court confirmed Debtors' plan of reorganization on October 16, 2020.[3] Under the terms of the Plan, all Debtors' Avoidance Actions were transferred to the GUC Trust.[4]

Peter Kravitz, in his capacity as trustee of the GUC Trust, ("Plaintiff") initiated this adversary proceeding.[5] The Complaint concerns a single transfer in the amount of $334,661.32 ("Contested Transfer") from Exide Technologies, LLC ("Exide") to Phoenixx, L.P. ("Phoenixx") which Plaintiff seeks (i) to avoid as a preference (Count I) or, in the alternative, as a fraudulent conveyance (Count II) and (ii) recover (Count III). Plaintiff also seeks to disallow any claims filed by Phoenixx in the main case until the avoided transfer is paid to Plaintiff (Count IV). Phoenixx filed its Answer.[6] The parties pursued mediation, but it was not successful.[7]

---

[2] Exide Technologies, LLC, Exide Delaware, LLC, Dixie Metals Company, and Refined Metals Corporation.

[3] Order Confirming Fourth Amended Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors, Main Case No. 20-11157, ECF No. 998.

[4] Fourth Amended Joint Chapter 11 Plan of Exide Holdings, Inc. and Its Affiliated Debtors §§ 5.4(c), 1.127, 1.130, 1.22, Main Case No. 20-11157, ECF No. 998-2 ("Plan"). All capitalized terms not otherwise defined herein shall have the meaning given in the Plan.

[5] Compl. to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502, ECF No. 1 ("Complaint").

[6] Answer and Affirmative Defenses of Phoenixx, L.P. to Compl., ECF No. 9.

[7] Mediator's Certificate of Completion, ECF No. 20.

Plaintiff filed his Motion and Opening Brief,[8] together with the Kravitz Declaration[9] and supporting exhibits. Phoenixx filed its Brief in Opposition[10] with the Helsel Declaration[11] and supporting exhibits. Plaintiff filed his Reply Brief.[12] Neither party requested oral argument. Accordingly, I will decide the Motion on the papers.

**Jurisdiction**

Jurisdiction exists pursuant to 11 U.S.C. § 1334. This is a core proceeding enumerated in 28 U.S.C. § 157(b)(2)(F) upon which I may enter a final order. Further, both Plaintiff and Defendant have consented to entry of final orders by the Court.[13]

**Facts**

Debtors produce and recycle batteries. As part of its normal, prepetition business operations, Exide purchased tin ingots from Phoenixx since at least July 2016.[14] Prior to

---

[8] Pl.'s Opening Br. in Supp. of Pl.'s Mot. for Summ. J. with Respect to Pl.'s Claims Against Def., Phoenixx, L.P., ECF No. 26-2 ("Pl. Brief").

[9] Decl. of Peter Kravitz in Supp. of Pl.'s Mot. for Summ. J. with Respect to Pl.'s Claims Against Def., Phoenixx, L.P., ECF No. 26-3.

[10] Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 29 ("Def. Br.").

[11] Decl. of Brian Helsel, on Behalf of Def., in Opp'n to Pl.'s Mot. for Summ. J., ECF No. 29-1.

[12] Reply in Supp. of Pl.'s Mot. for Summ. J. with Respect to Pl.'s Claims Against Def., Phoenixx, L.P., ECF No. 32 ("Reply").

[13] Compl. ¶ 7; Answer ¶ 7.

[14] Helsel Decl. Ex. 5 at PHOENIXX_0516, ECF No. 29-6. For ease of reference, I refer to the Bates stamps to identify specific page(s) of exhibits. Additionally, while Debtors relationship with Phoenixx went back for "over a decade," the invoices provided went back only two years. Helsel Decl. ¶ 5; Helsel Decl. Ex. 1, ECF No. 26-2; Helsel Decl. Ex. 3, ECF No. 26-4.

3

2019, Phoenixx invoiced Exide on Net Five Days payment terms.[15] At the beginning of 2019, the parties agreed to change the payment terms to Net Twenty Days.[16]

Invoices were sent by email. Sherri Kotkevich of Phoenixx's accounts payable department would email Exide's accounts payable helpdesk ("Helpdesk") and/or Cindy Bynum to deliver invoices, verify payment scheduling and inquire about late payments.[17] Exide paid Phoenixx exclusively via ACH transfers.[18] The following chart summarizes the invoicing and payment information in the record prior to the Contested Transfer.

| Invoice No. | Invoice Date | Invoice Amount | Payment Terms | Advice Date[19] | Payment Received Date |
|---|---|---|---|---|---|
| 16053 | 05/22/2018 | $ 224,209.85 | Net 5 | 05/31/2018 | 06/01/2018 |
| 16087 | 06/22/2018 | $ 447,096.94 | Net 5 | 06/28/2018 | 06/29/2018 |
| 16117 | 07/24/2018 | $ 447,365.24 | Net 5 | 08/02/2018 | 08/03/2018 |
| 16239 | 11/05/2018 | $ 224,871.24 | Net 5 | 11/15/2018 | 11/16/2018 |
| 16461[20] | 05/14/2019 | $ 442,799.83 | Net 20 | 06/14/2019 | 06/17/2019 |
| 16494 | 06/26/2019 | $ 444,019.35 | Net 20 | 07/18/2019 | 07/19/2019 |
| 16564 | 09/23/2019 | $ 361,998.60 | Net 20 | 10/17/2019 | 10/17/2019 |
| 16620 | 11/21/2019 | $ 361,998.60 | Net 20 | 12/12/2019 | 12/13/2019 |
| 16655 | 01/14/2020 | $ 334,962.49 | Net 20 | 02/10/2020 | 02/11/2020 |

---

[15] Helsel Decl. ¶ 10, Ex. 3.

[16] Helsel Decl. ¶ 10, Ex. 1.

[17] *See generally* Helsel Decl. Ex. 5 (emails dated from 2016-2019).

[18] Helsel Decl. Ex. 2, ECF No. 29-3.

[19] I use the term Advice Date for the date Exide notified Phoenixx that a payment would be made on the following day. Helsel Decl. Ex. 2; Helsel Decl. Ex. 4, ECF No. 29-5. In the Kravitz Declaration, Mr. Kravitz provided a chart with columns for CheckDate, ClearDate or DeliveryDate, with each date being the same. Kravitz Decl. Ex. F, ECF No. 26-9. This does not appear to be accurate.

[20] Payment for Invoice No. 16461 is the only transfer Exide initiated on a Friday. That payment was received on the next business day, consistent with the other payments.

On November 21, 2019, Exide ordered 44,092.4 pounds of Grade A Tin Ingots from Phoenixx. On February 6, 2020, Phoenixx invoiced Exide $334,661.32 with Net Twenty Days payment terms (the "Invoice").[21] The day after Phoenixx issued the Invoice, Ms. Kotkevich contacted the Helpdesk and Cindy Bynum to confirm they had received it.[22] Yaroslav Yankov, Exide's Accounts Payable Executive, replied that same day, indicating that the Invoice had "been processed in [Exide's] system with due date 02/26/20."[23]

Exide did not pay the Invoice on February 26, 2020. Thereafter, a series of emails followed between Ms. Kotkevich and the Helpdesk and Ms. Bynum regarding payment of the Invoice, with Ms. Kotkevich following up on March 3, 4, 5, 9 and 11.[24] In her March 11 email, Ms. Kotkevich copied Phoenixx's Account Payable manager, Meg Helsel.[25] Ms. Kotkevich followed up again on March 23.[26] That same day, Ms. Bynum responded that the invoiced amount would be paid on March 25, 2020.[27] In a separate email dated March 24, 2020 from Phoenixx's president, Brian Helsel to Paul Chidiac, director of raw materials commodities for Exide, Mr. Helsel advised that "[t]he late payment is causing an issue and we need to be paid ASAP and also recoup a late fee."[28] After Mr. Chidiac confirmed that

---

[21] Kravitz Decl. Ex. A, ECF No. 26-4.

[22] Kravitz Decl. Ex. D at PHOENIXX_2652-2653, ECF No. 26-7.

[23] Kravitz Decl. Ex. D at PHOENIXX_2654.

[24] Kravitz Decl. Ex. D at PHOENIXX_2682, 2683, 2686, 2689, 2700, 2710.

[25] Kravitz Decl. Ex. D at PHOENIXX_2710.

[26] Kravitz Decl. Ex. D at PHOENIXX_2716.

[27] Kravitz Decl. Ex. D at PHOENIXX_2719.

[28] Kravitz Decl. Ex. D at CTRL0000379414.

the payment would be made March 25, 2020, Mr. Helsel indicated that the late fee would be $1,505.97.[29] On March 26, Mr. Helsel emailed Mr. Chidiac and Ms. Bynum, "We still have not received any payment, what is the status?"[30] Mr. Chidiac responded that he was working on an update, then advised in another email that Exide was "[p]aying in full today $334,661.32."[31]

The Contested Transfer was initiated on March 26, 2020 by ACH transfer to be for direct deposit the following day.[32] No late fee was assessed.[33]

Exide placed two orders on March 24, 2020 (pre-bankruptcy, and three days before the Contested Transfer was paid) which were invoiced June 12, 2020 and July 2, 2020, respectively.[34] The estate also placed a postpetition order on June 18, 2020, which was invoiced on August 7, 2020.[35]

**Legal Standard**

Summary judgment motions in adversary proceedings are governed by Fed. R. Civ. P. 56.[36] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[29] Kravitz Decl. Ex. D at CTRL0000379414.

[30] Kravitz Decl. Ex D at PHOENIXX_2735 (cleaned up).

[31] Kravitz Decl. Ex D at PHOENIXX_2736-2737.

[32] Kravitz Decl. Ex. D at PHOENIXX_2738-2739.

[33] Helsel Decl. ¶ 19.

[34] Helsel Decl. Ex. 6, PHOENIXX_002-003, ECF No. 29-7.

[35] Helsel Decl. Ex. 6, PHOENIXX_001.

[36] Fed. R. Bankr. P. 7056.

law."[37] A dispute is "genuine" if there is evidence that could support a judgment in favor of the nonmovant.[38] A fact is material if it "might affect the outcome of the suit under the governing law . . . ."[39] At summary judgment "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"[40] "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[41] However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]" to avoid summary judgment.[42]

## Discussion

Plaintiff brings his Motion for summary judgment on all "Plaintiff's claims against" Phoenixx.[43] Plaintiff therefore seeks summary judgment on three analytically distinct points based on what he asserts are uncontested facts: (i) that he has proven the Contested Transfer is a preference,[44] (ii) that Phoenixx cannot prove its affirmative defenses as a matter of law, and (iii) that he is entitled to prejudgment interest.

---

[37] Fed. R. Civ. P. 56(a).

[38] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[39] *Id.*

[40] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)) (alteration in original).

[41] *Anderson*, 477 U.S. at 249.

[42] *Anderson*, 477 U.S. at 252.

[43] Mot. 1.

[44] 11 U.S.C. § 547(b) provides:

7

As to the first point, Plaintiff briefed his arguments in support of his affirmative case. Phoenixx does not challenge that the Contested Transfer meets all the elements of a preference.[45] Accordingly, Plaintiff has met his initial burden to show that, absent defenses, he is entitled to summary judgment as a matter of law.

As to the second point, where, as here, a plaintiff has moved for summary judgment arguing that a defendant's affirmative defenses are meritless, the court must first determine if there are disputed material facts related to those defenses.

Given the outcome here, the third point is moot.

---

> Except as provided in subsections (c), (i), and (j) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>    (A) on or within 90 days before the date of the filing of the petition; . . . and
> (5) [ . . . ] enables such creditor to receive more than such creditor would receive if—
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
> (6) such creditor received payment of such debt to the extent provided by the provisions of this title.

[45] Answer 8 ("Phoenixx admits that it received the payment referenced on Exhibit A but denies that the transfer is avoidable"); Def. Br. ¶ A ("Phoenixx does not necessarily dispute Plaintiff's paragraphs 1-13 of the Undisputed Material Facts section of its Memorandum of Law. Phoenixx submits, however, that the following are additional Material Facts which preclude entry of Summary Judgment in favor of Plaintiff."). Cf. Pl. Br. ¶¶ 1-13 (citing Kravitz Decl. for factual support of § 547(b) preference).

## I. The "Factual Disputes" Raised by Phoenixx Are Really Legal Disagreements

Phoenixx asserts genuine disputes of fact with respect to the sole affirmative defense the parties brief on the merits—the ordinary course of business defense.

*First*, Phoenixx argues that "[a]t the very minimum a genuine issue of material fact exists as to the historical timing of receipt payments as between the parties."[46] But no factual disputes exist; the records are clear. As reflected in the above chart, which was created from the exhibits submitted by both parties, Exide initiated each payment on the Advice Date and Phoenixx received the payment the following business day, or the Payment Received Date. Phoenixx questions which date—the Advice Date or the Payment Received Date—should be used in the ordinary course of business defense calculation. That is a legal issue.[47]

*Second*, Phoenixx claims that there is a genuine issue of material fact as to whether the ordinary course of business analysis should consider payments from Exide to Phoenixx in 2018 under the Net Five Days payment terms. Phoenixx asserts it should not. Once again, this is a legal issue.

*Third*, Phoenixx claims that the lack of supporting documentation for Plaintiff's summary calculations and payment charts[48] creates an issue of material fact. While the lack of supporting documentation could have been fatal to Plaintiff's Motion, Phoenixx supplied the underlying communications and invoices through the Helsel Declaration, thereby

---

[46] Def. Br. 16.

[47] Regardless, a difference of one day is not material on the facts here.

[48] Kravitz Decl. Ex. E, ECF No. 26-8; Kravitz Decl. Ex. F.

providing the evidence necessary to conduct the ordinary course of business analysis.[49] There is no factual dispute.

*Fourth*, Phoenixx asserts there is a genuine issue of material fact as to whether it was aware of Exide's insolvency. Plaintiff has presented no evidence contrary to Mr. Helsel's testimony that "Phoenixx was unaware and had no knowledge that Exide was facing financial difficulties."[50] Phoenixx's lack of knowledge is not disputed.

*Fifth*, Phoenixx argues that Plaintiff's contention that Phoenixx abandoned its other affirmative defenses creates a genuine dispute of material fact. Whether Plaintiff may treat defenses as abandoned for purposes of summary judgment is a question of law.[51]

---

[49] *Compare* Kravitz Decl Exs. E, F *with* Helsel Decl. Exs. 1-4.

[50] Helsel Decl. ¶ 20.

[51] Phoenixx's raises four defenses in its Answer: (i) the Contested Transfer was made in the ordinary course of business (First Defense), (ii) the Contested Transfer was not avoidable to the extent Phoenixx is entitled to recoupment and/or set-off (Second Defense), (iii) the Contested Transfer was not made in the preference period, was not made on account of an antecedent debt, and Phoenixx had no knowledge of Exide's insolvency at the time of the Contested Transfer (Third Defense) and (iv) the Complaint fails to state a claim upon which relief may be granted (Fourth Defense). Answer 14-16.

Plaintiff argues that Phoenixx abandoned the Second Defense because it "received only perfunctory treatment in the Answer and has received no subsequent attention." Pl. Br. 18. Absent authority requiring that Phoenixx do more than plead its defense in the Answer, I decline to consider the defense abandoned. Elements of Phoenixx's "Third Defense" are actually denials that Plaintiff has established certain elements of its affirmative case. As discussed above, Plaintiff has produced evidence supporting its case which Phoenixx does not contest. Further, whether Phoenixx had knowledge of Debtor's insolvency goes only to the subjective ordinary course of business analysis, which will be discussed, *infra*. In any event, Plaintiff has produced no evidence that Phoenixx had any such knowledge. Phoenixx's Fourth Defense is boilerplate. It evokes a pleading standard, which is brought by a defendant in a motion to dismiss. It is not relevant to a summary judgment motion.

10

## II. There is Evidence to Support the Ordinary Course of Business Defense

The preference statute was drafted to balance the policy aims of ensuring equitable treatment of creditors "by deterring the failing debtor from treating preferentially its most obstreperous or demanding creditors in an effort to stave off a hard ride into bankruptcy" and incentivizing creditors to continue doing business with the debtor to increase its chances of survival.[52] The Third Circuit has stated that when a debtor-creditor relationship "has been cemented long before the onset of insolvency—up through and including the preference period—we should pause and consider carefully before further impairing a creditor whose confident, consistent, ordinary extension of trade credit has given the straitened debtor a fighting chance of sidestepping bankruptcy and continuing in business."[53]

To establish the ordinary course of business defense, the transferee must prove that the challenged "transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was" either "made in the ordinary course of business or financial affairs of the debtor and

---

[52] *Fiber Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 220 (3d Cir. 1994). *See also Union Bank v. Wolas*, 502 U.S. 151, 160 (1991) ("[The ordinary course of business] exception was intended to 'leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'" (quoting H.R. Rep. No. 95-595, p. 373 (1977))).

[53] *Molded Acoustical*, 18 F.3d at 225.

the transferee" (the "subjective test")[54] or "made according to ordinary business terms" among firms similar to the creditor (the "objective test").[55]

### A. Phoenixx Has Put Forth No Evidence on the Objective Test

Phoenixx does not offer any evidence in support of its claim that the Contested Transfer was "made in accordance with ordinary business terms" under the objective test.[56] In the Third Circuit, establishing conformity with "ordinary business terms" requires an evidentiary showing that the transfer falls within "the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage."[57] The only support Phoenixx offers is Mr. Helsel's statement that "[t]he timing of invoicing and the payment of the $334,661.32 at issue in this case . . . was consistent with the industry standard."[58] Phoenixx cannot meet its burden with mere conclusory statements unsupported by specific facts.[59] Accordingly, Phoenixx does not satisfy the objective test.

### B. Phoenixx Has Shown a Genuine Dispute of Material Fact Related to the Subjective Test

When conducting the subjective test, courts look to numerous factors including:

---

[54] 11 U.S.C. § 547(c)(2)(A). Although referred to as the "subjective" test, § 547(c)(2)(A) does not look to the subjective impression or intent of the parties to a transfer. Rather, it is a determination of the "normal payment practice between the parties." *Sass v. Vector Consulting, Inc. (In re American Home Mortg. Holdings, Inc.)*, 476 B.R. 124, 135 (Bankr. D. Del. 2012).

[55] 11 U.S.C. § 547(c)(2)(B); *Molded Acoustical*, 18 F.3d at 220 (citing *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993)).

[56] 11 U.S.C. § 547(c)(2)(B).

[57] *Molded Acoustical*, 18 F.3d at 224 (adopting with modification the Seventh Circuit's holding in *Tolona Pizza*, 3 F.3d at 1033).

[58] Helsel Decl. ¶ 6.

[59] *E.g.*, *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009).

(i) the length of time the parties engaged in the type of dealing at issue; (ii) whether the subject transfers were in an amount more than usually paid; (iii) whether the payments at issue were tendered in a manner different from previous payments; (iv) whether there appears to have been an unusual action by the debtor or creditor to collect on or pay the debt; and (v) whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition. *Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234, 240 (Bankr. D. Del. 2010); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Del., Inc.)*, 320 B.R. 541, 548-49 (Bankr. D. Del. 2004). No one factor is determinative. *Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.)*, 463 B.R. 302, 306 (Bankr. D. Del. 2010).[60]

Courts also look at the relative timing of payments and the policies underlying the preference statute.

(i) *The Five Factors*

There are no disputed facts on the first three factors. The evidence shows that Phoenixx had been selling Debtors tin ingots for at over a decade.[61] In the two years prior to bankruptcy, those transactions ranged from $224,209.85 to $447,365.24.[62] At $334,661.32, the Contested Transfer falls almost precisely in the middle of that range. Additionally, all payments in the historical period and the Contested Transfer were tendered via ACH transfers.

But as to the last two factors, Defendants have submitted evidence that creates genuine disputes of material fact. As to collection efforts, Phoenixx submitted evidence that, historically, Ms. Kotkevich followed up on unpaid invoices by email as she did with

---

[60] *Burtch v. Prudential Real Estate & Relocation Servs., Inc. (In re AE Liquidation, Inc.)*, Case No. 08-13031, Adv. Pro. No. 10-55543, 2013 WL 3778141, at *5 (Bankr. D. Del. July 17, 2013) *aff'd in pertinent part* 2015 WL 5301553 (D. Del. Sept. 10, 2015).

[61] Helsel Decl. ¶ 5.

[62] Helsel Decl. Exs. 1, 3.

13

the Contested Transfer. Here there is also evidence that, in addition to the usual email communication, one email was copied to Phoenixx's account payable manager. Phoenixx's president also participated in a subsequent email thread and separately reached out to Exide's director of raw material commodities. These emails, which were brief, professional and non-threatening, could be viewed as ordinary course or at least not "unusual" for purposes of the subjective test.[63] Phoenixx also presented uncontested evidence that it did not know of Exide's financial difficulties, and that it continued to accept orders from Exide notwithstanding the lack of payment.[64] Similarly, while Phoenixx threatened to assess a late fee, it did not. And a reasonable fact finder could question whether a threatened late fee of $1505.97—.0045% of the Contested Transfer—could be considered pressure or an attempt to take advantage of Exide. Plaintiff presented no evidence that the threat of a late fee or the emails from Mr. Hensel actually prompted payment.[65]

---

[63] "Unusual actions constitute 'unusual behavior designed to improve the lot of one creditor at the expense of others.'" *FBI Wind Down Inc. Liquidating Trust v. All American Poly Corp. (In re FBI Wind Down, Inc.)*, 581 B.R. 116, 143 (Bankr. D. Del. 2018) (quoting *Molded Acoustical*, 18 F.3d at 225). "A creditor can take advantage of a debtor's financial condition by taking on additional collateral, assessing late fees, or through pressuring debtor for payments." *Id.* Additionally, "[t]elephone calls and other communications may be considered unusual if they resemble 'a calculated response to a deteriorating creditor-debtor relationship.'" *AE Liquidation*, 2013 WL 3778141, at *7 (quoting *Am. Home Mortg.*, 476 B.R. at 139).

[64] Helsel Decl. ¶¶ 20-21 ("Phoenixx was unaware and had no knowledge that Exide was facing financial difficulties, [sic] until Phoenixx received notice that Exide filed for bankruptcy" and "Phoenixx believed the late payment of the [Contested] Transfer was simply a clerical error" consistent with Exide's representation in its March 3, 2020 email.).

[65] Plaintiff argues that this late fee resulted in the payment the next day. *E.g.*, Reply 5. But this conclusory statement is not evidence. *Kirleis*, 560 F.3d at 161.

*(ii)   Relative Timing of Payments*

The relative timing of payments is also examined as part of the subjective test.[66] A deviation from the historical norms the parties have established over the course of their business relationship during the preference period suggests that a transfer may be preferential. And, while late or early payments may initially appear outside the ordinary course, the presumption can be rebutted by evidence of a consistent pattern of similar payments between the parties.[67]

Plaintiff contends I should employ a pure range analysis using the range of days from Invoice Date to Advice Date inclusive of 2018 transactions made on Net Five Days terms. This results in a range of 6-35 days and a weighted average of 18 days.[68] Plaintiff argues that because the Contested Transfer was made 49 days after the Invoice Date—14 days outside the historical range—it was not made in the ordinary course of business between the parties.

Phoenixx also performs a range and average calculation but excludes the 2018 transactions because of the 2019 change in payment terms. Phoenixx asserts that the inclusion of the 2018 transactions skews the average and range of time from invoice to payment in the historical period and that the average and range derived from the 2019-2020 transactions more accurately represent the ordinary course of business between the parties.

---

[66] *E.g.*, *FBI Wind Down, Inc.*, 581 B.R. at 140-41.

[67] *See e.g.*, *Big Wheel Holding Co., Inc. v. Fed. Wholesale Co. E. (In re Big Wheel Holding Co., Inc.)*, 223 B.R. 669, 674 (Bankr. D. Del. 1998) ("lateness of payment does not preclude a finding that the payment was made in the ordinary course, and indeed a pattern of late payments can establish an ordinary course between the parties").

[68] Pl. Br. 23. Figures in this paragraph are taken from Plaintiff's opening brief. Plaintiff asserts that his weighted average calculation is "for illustrative purposes." Reply 6. Plaintiff does not specify how the average is weighted.

15

Phoenixx compares the range of days from Invoice Date to Payment Received Date. Its calculations yield a range of 22-34 days and an average of 26 days.[69]

Ultimately, it does not matter whether one uses Plaintiff's calculations or Phoenixx's to compare the timing, the result is the same.[70] The Contested Transfer was received 50 days after the Invoice Date, which is well outside the historic range and well above the historic average calculated by either party.[71]

Considering all of the above, I conclude there is factual support in the record for Phoenixx's ordinary course defense. No one factor is determinative.[72] While the Contested Transfer falls outside of the historical range and above the historical average, the other factors could support an ordinary course finding. The intended purpose of the statute—to prevent preferential payments to both friendly and obstreperous creditors and to encourage entities on which the debtor relies (*e.g.*, critical vendors) to continue doing business with the

---

[69] Def. Br. 12-14.

[70] As I have previously noted, the court need not choose between or among different methodologies. Rather, different calculations used different information, all of which can provide the court with the complete picture of the relationship. *Miller v. Welke (In re United Tax Grp., LLC)*, Case No. 14-10486, Adv. Pro. No. 16-50088, 2021 WL 6138214, at *7 (Bankr. D. Del. Sept. 2, 2021). In that regard, given the change in payment terms, the Court also did a "comparative lateness" analysis measuring the number of days between the due date and the Payment Received Date. This yielded the additional information that historically Exide paid Phoenixx's invoices between 2 and 14 days late and an average of 5.55 days late. Once again, at 30 days late, the Contested Transfer falls well outside this historical range and well above the historical average.

[71] Phoenixx argues that, as a legal matter, the timing of the Contested Transfer is sufficiently similar to the historical transactions between Exide and Phoenixx to be within the ordinary course. Def. Br. 12, 14. Its argument focuses on *American Home Mortgage*, where the court concluded that certain challenged transfers were in the ordinary course even though the average time from invoice to payment in the preference period was more than double that in the historical period. But there the court's ruling hinged on consistency between the ranges, not the average payment times. *Am. Home Mort.*, 476 B.R. at 138. Therefore, *American Home Mortgage* does not aid Phoenixx.

[72] *AE Liquidation*, 2013 WL 3778141, at *5 (citing *Sierra Concrete*, 463 B.R. at 306).

debtors—could also be viewed to favor Phoenixx. If the evidence introduced at trial is the same as on the Motion, a reasonable fact finder could find in favor of Phoenixx. Accordingly, I will deny Plaintiff's Motion with respect to Count I.

### III.    Plaintiff Does Not Present Any Evidence in Support of Count II

In Count II, Plaintiff seeks to avoid the Contested Transfer as a constructive fraudulent conveyance. Specifically, he pleads that "Debtor(s) making [the Contested Transfer] did not receive reasonably equivalent value in exchange for such transfer(s)" while the Debtor(s) (i) were insolvent or rendered insolvent by the transfer(s), (ii) had unreasonably small capital (or would have after the transfer(s)) or (iii) intended to or believed they would incur debts beyond their ability to pay upon maturity.[73]

While Plaintiff seeks summary judgment on Count II (it seeks it on all claims), he provides no briefing or evidence to support a judgment in his favor. Nor do the undisputed facts focus on Count II. The facts that do exist show that the Contested Transfer was in payment of a legitimate antecedent debt (for tin ingots) and there is no suggestion that Exide paid other than a fair price. Accordingly, Plaintiff has failed to meet his burden. I will deny his Motion with respect to Count II.

### IV.    The Motion for Summary Judgment Fails as to Counts III and IV

In Count III, Plaintiff seeks to recover any transfer avoided through Counts I or II pursuant to § 550. Because I will deny Plaintiff's Motion with respect to Counts I and II, he is not currently entitled to any recovery. Similarly, with respect to Count IV, I have neither found that property is recoverable from Phoenixx nor reconsidered any claim by Phoenixx.

---

[73] Compl. ¶ 40.

Therefore, Plaintiff is not currently entitled to relief under § 502(d) or (j). For these reasons, I will deny the Motion with respect to Counts III and IV.

**Conclusion**

For the reasons set forth above, Plaintiff's Motion is denied on all counts. A separate order will enter.

Dated: June 20, 2025

*[signature]*
Laurie Selber Silverstein
United States Bankruptcy Judge